SALLY NEWHALL *vs.* BENJAMIN IRESON, JR.

A boundary in a deed of land, "beginning at the northeast corner of land of J. S., and thence running southerly upon a brook to a creek, and thence running easterly across the said creek six poles to a stake," and by various courses and distances to the first mentioned bound, passes the land to the thread of the brook only.

SHAW, C. J.   This is a real action brought to recover a small undivided part of a very narrow strip of land, constituting one half of the bed of a brook in Lynn, sometimes called Chocolate Mill Brook.   The question depends upon the construction of a deed from Joseph Ballard to Thomas Newhall in 1778, and upon evidence offered to give effect and operation to the descriptive part of the deed ; also evidence to show what was intended by the descriptive words, and by other deeds, prior and subsequent, in which the same bound is referred to in conveyances of the same land, either separately or in connection with other land ; also evidence of possession, adverse and continued, long enough to establish a title by prescription.

By agreement the case was submitted to the court upon a mass of testimony and documentary evidence, with liberty to draw any such inferences as a jury might do, and with authority, according to the result, to enter a judgment for the demandant or the tenant.   The case was argued at the last November term in Essex.

There is scarcely any question of law involved in the case, and the facts depend so much upon localities, that it is not easy to make them intelligible without surveys and plans ; nor is it necessary to do so.   The demandant, through various mesne conveyances, claims title to the same estate which was conveyed by Ballard to Thomas Newhall, which, we believe, is not controverted.   Under this title she claims the entire bed of the brook; whereas the tenant denies this claim, and maintains that she is entitled to the soil under the brook, to the extent of the centre of the stream only, *ad filum aquæ.*

The descriptive part of the deed in question is thus : " Begin

ning at the northeast corner of land belonging to the heirs of
Captain Jacob Newhall, deceased, and from thence running
southerly upon a brook to Jenks's Creek, and from thence run-
ning easterly across the said creek six poles to a stake," and by
various courses and distances " to the first mentioned bound."
Jenks's Creek is a salt water creek, in which the brook in ques-
tion discharges itself, and finds its outlet in Saugus River, an
arm of the sea.

The court are of opinion that this description, bounding on
the brook, in the absence of other words to control or modify
the natural and legal effect of such description, carried the grant
to the centre of the brook only, and did not include the entire
bed of the brook. In some of the earlier deeds this brook is
described as a stream dividing the land from that on the other
side. We say the natural construction, the construction most
likely to conform to the intent of the parties, because such
division would be most beneficial to both parties, by affording
to both a watering place for cattle, the use of the water for
irrigation and other useful purposes. And this rule is also the
legal one, because it is well established by principle and au
thority. *Lunt* v. *Holland,* 14 Mass. 151. *Knight* v. *Wilder,*
2 Cush. 210. 2 Cruise Dig. (Greenl. ed.) tit. 32, *c.* 21, § 31, *note.*

There is nothing in this deed to control this result. One cir-
cumstance that might be supposed to have a contrary tendency
is, that it begins at a corner of another man's land. But if
that man's land bounds on the brook, as it must, the strong
probability is that he held by a like conveyance, as bounded on
the brook, and then his corner would be in the centre of the
brook.

One other circumstance which at first attracted our attention
is, that in tracing the boundary down the brook to the creek it
says " thence across the said creek six poles." Had it been across
the brook, as it first appeared to be, it would have seemed that
the whole bed of the brook was included, making the opposite
bank from the land granted the boundary line. But it is after
the brook has terminated at the creek, thence across the creek,
which is quite consistent with the line running down the middle

of the brook, from the starting point to its termination in the creek. We therefore apply the general rule, that this boundary carried the grant only to the middle of the brook.

We have examined and considered the evidence *aliunde*, and we find no fact to alter or vary the construction of this deed, either giving a different meaning and effect to the descriptive words, or establishing a title by prescription, that is by exclusive, adverse and uninterrupted possession, occupation and enjoyment necessary to constitute a title by prescription. .

*Demandant nonsuit.*

*O. P. Lord*, for the demandant.

*D. Peabody*, (*S. H. Phillips* with him,) for the tenant.

